IN

# THE SUPREME COURT

OF

## THE STATE OF LOUISIANA.

---

### WESTERN DISTRICT.
OPELOUSAS, SEPTEMBER, 1837.

---

MELANÇON'S HEIRS *vs.* DUHAMEL ET AL.

ON A RE-HEARING.

.Where a judgment of eviction has been obtained by a third person against the vendee, it is not necessary that a writ of possession issue against him to complete the eviction. The vendee may voluntarily abandon the premises, and he is exonerated from paying the price.

So, where the vendor tenders a renunciation in due form, by the person obtaining the judgment of eviction, relinquishing all advantages under it, the vendee is not required to accept it and pay the price, if any act has been done in the mean time to invalidate the title.

WESTERN DIST.
*Sept.* 1837.

MELANÇON'S
HEIRS
*vs.*
DUHAMEL ET AL.

This case comes up on a re-hearing. At the September term, 1834, of this court, holden at Opelousas, a judgment was rendered condemning the representative of Dr. Duhamel and his surety, to pay to the plaintiff the *price* of a tract of

WESTERN DIST.
Sept. 1837.

MELANÇON'S
HEIRS
vs.
DUHAMEL ET AL. land, originally purchased at the probate sale of Melançon's succession by Duhamel. The latter resisted payment on the ground that he was evicted by a judgment of court, obtained by Pierre Broussard. The plaintiff, tendered an act of renunciation by Broussard, relinquishing all advantages he had obtained under said judgment, to the defendant, and still claimed the price of the land. *The defendants* contended, that Broussard had disposed of *all the land* he gained by the judgment, before he renounced, and consequently his renunciation went for nothing.—*See 7 Louisiana Reports*, 286.

*Simon*, for the defendants, asked for a re-hearing on the following grounds :

1. The eviction of Duhamel, had taken place long before the act of renunciation of Pierre Broussard, of the advantages of his judgment, was made, and was complete both in law and in fact.

2. The act of renunciation of Broussard, tendered by plaintiff to the defendants, does not destroy the effect of the eviction or restore the land, and is in fact no title at all.

3. The court says " the record contains no evidence of an actual dispossession or ouster of Duhamel, either forced or voluntary," and further, " had the judgment in favor of Broussard, been followed by the execution of a writ of possession, or had Duhamel voluntarily executed it by abandoning the premises, his claim against his vendor would have been perfect, and the latter could not have escaped from the consequences of the ouster of his vendee, etc."

From the mass of records and evidence introduced in this case, the court has evidently overlooked the facts which sufficiently show the eviction, and that there had been at least a *voluntary* dispossession, if not a forced one ; and that this eviction had been completed, not only by the dispossession of Duhamel, but also from the acts of Broussard, subsequent to the judgment decreeing him the land, and before making the renunciation.

4. In 1824, when the mandate of the judgment of eviction was sent down to the District Court, *then* an order was entered,

that the judgment of the Supreme Court be carried into <span>WESTERN DIST.</span> effect. Was it then necessary that a writ of possession should <span>*Sept.* 1837.</span> issue and be executed by the sheriff, if after such order of <span>MELANÇON'S</span> execution, Duhamel thought proper to abandon the premises, <span>HEIRS</span> <span>*vs.*</span> and let Broussard take possession ? Was not the order to <span>DUHAMEL ET AL.</span> execute the judgment of this court, sufficient to authorize Duhamel to abandon the land ? Was not the order an actual eviction ?

5. The records of the several suits in evidence in this case, show that P. Broussard sold or transferred all the land obtained by judgment against Duhamel, to different persons, so that his renunciation afterwards, made of all the advantages he had gained by the judgment, was of no effect.

For these reasons, and in reference to the evidence in the record, a re-hearing is respectfully solicited.

A re-hearing of the case was ordered at the next term of the court, and it was reinstated on the docket.

And now at this term the case was submitted to the court, by Edward Simon, Esq., of Counsel for the defendants, on the facts and argument contained in his petition for a re-hearing.

*Bullard, J.,* delivered the opinion of the court.

In this case a re-hearing was granted at a former term, on the suggestion of the defendants' counsel, that although the judgment in favor of Pierre Broussard, for the land in dispute, was not followed by any writ of possession, nor voluntarily executed, and while the purchaser was thereby undisturbed in his possession, may not amount to such an eviction as to entitle the defendants to a rescission of the sale upon a renunciation on the part of Broussard of the benefit of that judgment, yet that in point of fact, Broussard at the time of his renunciation had parted with his title, partly by a sale of a part of the land to Joshua Baker, and partly in consequence of his contract with Ursin Broussard, *and* that one of the plaintiffs went into possession.

The record, upon a more careful inspection of it, certaintly shows, that immediately after the judgment of the Supreme Court in favor of Broussard, he did sell to J. Baker

WESTERN DIST.
Sept. 1837.

MELANÇON'S
HEIRS
vs.
DUHAMEL ET AL.

the lower arpent front of the disputed tract of land, a long time prior to his renunciation. At that time, therefore, he was not owner of the whole tract under the judgment, and consequently could not by his renunciation, convey any title to the defendants.

This tract of land purchased by Duhamel, is described as adjoining Ursin Broussard above. By a *contract between* Pierre and Ursin Broussard as early as 1817, it was agreed, that if the former should recover any part of the land in dispute, it should go to the latter as a part of the six arpents front, which he was to have in that provisional partition of his father's lands. On the rendition of the judgment in favor of Pierre Broussard, and as soon as the land became his by the effect of that judgment, the title immediately vested in Ursin Broussard. Accordingly, by a contract before a notary, passed subsequently to the judgment, Pierre Broussard confirms to Ursin his title to six arpents front, according to the previous act of 1817.

From all the evidence in the record it appears, that although no writ of possession issued upon the judgment rendered by the Supreme Court, yet Duhamel's representatives abandoned the land, and entered a formal waiver of any claim for damages against his warrantors ; and that in point of fact, the land at the time the trial took place in this case, was not in possession of Duhamel, but that Leon Latiolais, the husband of one of the plaintiffs, and the brother-in-law of Ursin Broussard, was in possession at least of a part of it.

Under all the circumstances disclosed in this case, we are satisfied, that so far as Latiolais, the surety, is concerned, he is entitled to relief. He was, so far as it appears to the court, ignorant of any collusion between Duhamel and Broussard ; and, the renunciation of Pierre Broussard at a time when his counsel alone was not sufficient to destroy the rights of others under that judgment, ought not to be considered as placing the parties in the same situation they were in before the eviction.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

*Where a judgment of eviction has been obtained by a third person against the vendee, it is not necessary that a writ of possession issue against him to complete the eviction. The vendee may voluntarily abandon the premises, and he is exonerated from paying the price.*

*So, where the vendor tenders a renunciation in due form, by the person obtaining the judgment of eviction, relinquishing all advantages under it, the vendee is not required to accept it and pay the price, if any act has been done in the mean time to invalidate the title.*